UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

JENNIFER ANN CABRERA,

      Debtor.
_____/

Case No. 18-13213-LMI
Chapter 13

**OBJECTION TO CONFIRMATION OF THE**
**FIFTH AMENDED CHAPTER 13 PLAN**

Gilbert Law Group, P.A., formerly known as Gilbert & Caddy, P.A. (the "**Creditor**"), by and through undersigned counsel, files this *Objection to Confirmation of Chapter 13 Plan* (the "**Objection**") to the Fifth Amended Plan, [ECF No. 64], filed by Jennifer Cabrera (the "**Debtor**"), and states the following:

1. On March 20, 2018, this case was commenced with the filing of a voluntary chapter 13 bankruptcy in the Southern District of Florida. [ECF No. 1].

2. On May 7, 2018, the Debtor filed her Initial Schedules (individually, a "**Schedule**"), [ECF No. 23], and her first Chapter 13 Plan. [ECF No. 22].

3. The Debtor amended her plan five times: May 23, 2018, [ECF No. 39]; June 5, 2018, [ECF No. 45]; June 8, 2018, [ECF No. 51]; June 14, 2018, [ECF 54]; and June 19, 2018, [ECF No. 64].

4. The Debtor's most recent chapter 13 plan is the Fifth Amended Chapter 13 Plan (the "**Plan**"). [ECF No. 64].

1

**I.     The Debtor Is Not Eligible to Be a Debtor in a Chapter 13 Case Pursuant to Section 109(e)**

Section 109(e) sets eligibility requirements for who may be a debtor in a chapter 13 case, and states in pertinent part:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $394,725 . . . may be a debtor under chapter 13 of this title.

The Debtor is not eligible to be a debtor under Chapter 13, because the Debtor has noncontingent, liquidated, unsecured debts in excess of $415,000.00. Therefore, this Court should not confirm the Debtor's plan and the Debtor's case should be dismissed.

**1.     The Debtor's Second Mortgage Puts the Debtor Over Eligibility Limits of Section 109(e)**

The Debtor's real property, located at 690 SW 1st Court #3114, Miami, FL 33130, has two mortgages and county property taxes in arrears. The debts associated with said property are as follows:

  a. Miami-Dade Tax Collector: $9,161.40 (Claim No.: 8)

  b. Wells Fargo Home Mortgage, $430,000.00 [ECF No. 23]

  c. Wells Fargo Bank, N.A.: $453,852.17 (Claim No.: 10)

  d. Neo Venetia Condo: $0.00

For purposes of eligibility, all debts are calculated as of the petition date. 11 U.S.C. § 109(e). The Miami-Dade Tax Collector lien is $9,161.40, and this claim is secured. Wells Fargo Home Mortgage has a first mortgage (the "**First Mortgage**") in the amount of $430,000.00. This claim is partially unsecured because the value of the collateral, according to the Debtor's Schedule A, is $360,000.00. [ECF No. 23]. Also, Wells Fargo Bank, N.A. has a second mortgage (the "**Second Mortgage**") in the amount of $453,852.17. Therefore, the total amount of the secured claim on the property is $893,013.57, but based upon the Debtor's valuation of the property of $360,000.00, the Debtor's unsecured claims are in the amount of $533,013.17.

2

The Creditor asserts that the unsecured portion of the claims against the property constitute unsecured, liquidated, non-contingent claims which make the Debtor ineligible for chapter 13 relief. The statutory debt limitation for chapter 13 eligibility is set forth in section 109(e) of the Bankruptcy Code. *In re Del Cristo*, 2004 WL 2735240, at *1 (Bankr. S.D. Fla. 2004). Section 109(e) also prescribes that the unsecured claims calculated must be noncontingent and liquidated. *In re De La Hoz*, 451 B.R. 192, 197 (Bankr. M.D. Fla. 2011). "A debt is noncontingent if all events giving rise to a debtor's liability occurred prior to the filing of the bankruptcy petition." *United States v. Verdunn*, 89 F.3d 799, 801 n.7 (11th Cir. 1996). "Liquidated" debt is defined as "that which has been made certain as to amount due by agreement of the parties or by operation of law," and, therefore, it is certain what is due and how much is due. *Id.* at 802 (quoting Black's Law Dictionary 930 (6th ed. 1990)). Whether a debt is liquidated "relates to the amount of liability, not the existence of liability." *Verdunn*, 89 F.3d at 802. The point in time at which the debts should be calculated is at the time the petition for relief was filed. *De La Hoz*, 451 B.R. at 197; *see also Verdunn*, 89 F.3d at 803 (finding the debtor's debts were "noncontingent, liquidated, unsecured debts on the date he filed his bankruptcy petition").

A "debt is secured only to the extent [a creditor] can enforce its security interest in property of the estate"; however, when a claim exceeds the value of the collateral, the creditor "will be unable to enforce its security interest, and the undersecured portion will inevitably be treated as an unsecured non-priority claim." *In re Rios*, 476 B.R. 685, 690–91 (Bankr. D. Mass. 2012). Unsecured debts that have been "stripped off" of an undersecured claim shall be used to calculate whether a debtor is eligible for chapter 13 relief under section 109(e). *In re Claro-Lopez*, 2010 WL 2787621, at *1 (Bankr. S.D. Fla. July 14, 2010) (finding the unsecured portion of a creditor's bifurcated claim must be included in the § 109(e) calculation to determine a debtor's eligibility to

3

file under chapter 13); *see also In re Soderlund*, 236 B.R. 271, 273-74 (B.A.P. 9th Cir. 1999) ("The overwhelming majority of courts, including every circuit that has considered the question, have concluded that the undersecured portion of a secured creditor's claim should be counted as unsecured debt for § 109(e) purposes."); *Rios*, 476 B.R. at 690–91 (following the Fourth, Seventh, Eight, and Ninth Circuits, and a majority of bankruptcy courts, in utilizing 11 U.S.C. § 506(a) to bifurcate claims listed as secured on the petition date into secured and unsecured portions for determining § 109(e) eligibility). The chapter 13 eligibility requirements set forth in section 109(e) should be strictly enforced. *Soderlund*, 236 B.R. at 274.

Based upon the above analysis, the unsecured portion of the claims listed on Schedule D and/or filed by the creditors, is enough to make the Debtor ineligible for Chapter 13 relief. *See In re Weiser*, 391 B.R. 902, 907 (Bankr. S.D. Fla. 2008) ("As a threshold matter, the debtors do not satisfy the eligibility requirements for chapter 13 because their noncontingent and liquidated unsecured debts exceed the statutory maximum," and "[t]his fact alone requires dismissal of this joint Chapter 13 case.").

2. **The Debtor Has Additional Outstanding Unsecured Debt That Further Demonstrates the Debtor's Ineligibility for Chapter 13 Relief Pursuant to 11 U.S.C. § 109(e)**

Although the Second Mortgage alone makes the Debtor ineligible for chapter 13 relief, the Debtor's additional unsecured debt should be noted to accentuate the Debtor's ineligibility. Other than the bifurcated unsecured portion of the First Mortgage and the entire unsecured Second Mortgage, the Debtor's additional unsecured debt is as follows:

| Claim No. | Unsecured Creditor | Claim Amount |
|---|---|---|
| Claim No.: 2 | Gilbert Law Group, P.A. | $226,515.69 |
| Claim No.: 3 | Discover Bank | $3,937.54 |
| Claim No.: 5 | Quantum3 Group LLC | $688.10 |
| Claim No.: 6 | Quantum3 Group LLC | $1,630.02 |
| Claim No.: 7 | Quantum3 Group LLC | $1,795.45 |

| Claim No.: 9  | Portfolio Recovery Associates, LLC | $3,173.94   |
|---------------|------------------------------------|-------------|
| Claim No.: 12 | Department Stores National Bank    | $808.22     |
| Claim No.: 13 | Portfolio Recovery Associates, LLC | $7,501.13   |
| Claim No.: 14 | Portfolio Recovery Associates, LLC | $11,381.84  |
| Claim No.: 15 | Nordstrom, Inc.                    | $2,840.30   |
| Claim No.: 16 | Cherry Bekaert, LLP                | $44,003.75  |
| Claim No.: 17 | Financial Pacific Leasing Inc.     | $88,607.66  |
| Claim No.: 18 | TD Bank USA, N.A.                  | $861.03     |
| Claim No.: 19 | On Deck Capital, Inc.              | $17,892.49  |
| Claim No.: 20 | On Deck Capital, Inc.              | $14,766.34  |
|               | **TOTAL**:                         | **$426.403.50** |

Based upon the Debtor's unsecured debts, this Court should not confirm the Debtor's Plan and dismiss the Debtor's case because she is ineligible to file for chapter 13 relief based upon the eligibility requirements set forth in section 109(e) of the Code.

## II.     The Debtor's Plan Should Not Be Confirmed Because Her Schedules, Means Test, And Chapter 13 Plans Were Not Filed in Good Faith

The Debtor filed a Chapter 13 Voluntary Petition on March 20, 2018. [ECF No. 1]. On May 7, 2018, the Debtor filed a Form 122C-1 [ECF No. 24] calculating her current monthly income and a Form 122C-2 calculating her disposable income [ECF No. 25], (collectively known as the "Means Test"). Also on May 7, 2018, the Debtor filed her Schedules. [ECF No. 22]. One month later, on June 18, 2018, the Debtor filed an Amended Means Test. [ECF No. 61].

On a Means Test form at page 4, line 2, it asks for "Income by Month" for the previous six (6) months. In the Debtor's first filing of the Means Test form on May 7, 2018, the Debtor referred to the six-month period between September 2017 and February 2018, listing an income of $8,000 per month. [ECF No. 24]. On June 18, 2018, the Debtor filed an Amended Means Test form listing the same six-month period but with a decreased monthly income of only $4,035.50. [ECF 61].

The two Means Test forms were submitted within a two-month period, but the Debtor has not provided any explanation of why this backward-looking monthly income amount has

5

decreased by $3,965.00 from one filing to the next. Moreover, the Debtor's Schedule "I" lists an income of $8,000, [ECF No. 23], which contradicts the Debtor's new amended Means Test. *See* [ECF 61]. The Debtor's Plan should not be confirmed and her case should be dismissed.

1. **Based on The Debtor's Disposable Monthly Income in Schedules I and J, The Debtor Is Not Giving Enough to Unsecured Creditors**

In the Debtor's Fifth Amended Plan, the Debtor is only planning to pay unsecured nonpriority creditors $49.65 per month, from month ten (10) to month sixty (60) of the Plan's duration, which only amounts to $2.512.15. [ECF No. 64]. In the Debtor's Means Test, she calculates her monthly disposable income to be $995.78 before she subtracts any allowed deductions, [ECF No. 25], and in the Debtor's Schedule "J" at line 24, the Debtor lists a monthly net income of $471.34. [ECF No.22]. The Debtor's disposable income and net monthly income demonstrate that the Debtor should be contributing substantially more money towards unsecured creditors. *See In re Amato*, 366 B.R. 348, 350–51 (Bankr. D.N.J. 2007) ("The statutory language is unambiguous and clearly directs that all of a debtor's "disposable income" is to be paid over to unsecured creditors, leaving nothing for payment to other classes of creditors (*i.e.*, administration, priority or secured claims)."). Since the Debtor has general unsecured creditors debt in excess of $415,000.00, the Debtor should be using all of her net income to pay her unsecured creditors. The Debtor's Plan should not be confirmed because it is not in the best interest of the creditors.

2. **Moreover, The Debtor's Car Payment Is Not Reasonably Necessary Because It Is Far Beyond the National Average, And That Further Decreases the Amount of Money Being Paid to General Unsecured Creditors**

On May 7, 2018, in the Debtor's Schedule "J" at line 17a, the Debtor listed her car payment for "Vehicle 1" as $870.00. [ECF No. 23]. Also filed on May 7th was the Debtor's Initial Means Test, and there the Debtor listed that she did not have an "average monthly payment" for her

vehicle. [ECF No. 24, line 13b]. On June 18, 2018, the Debtor filed an Amended Means Test again listing her average monthly car payment as zero dollars, [ECF No. 61], which is different than the amount listed on the Debtor's Schedule. *See* [ECF No. 23]. Furthermore, the Debtor listed on her Amended Means Test, on page 7 of the filing at line 11, that she is claiming an operating expense for "1" vehicle, and subsequently claims a "vehicle operating expense" in the amount of $343.00. [ECF No. 61].

The Debtor has provided conflicting information regarding whether she has a car payment and what that payment costs. However, on the Debtor's Fifth Amended Plan, under Section VI, labeled "Executory Contracts and Unexpired Leases," the Debtor asserts that she is going to assume the lease for her Lexus RX350 vehicle. All of these assertions cannot be true at once. The Debtor is either assuming her lease and paying the $870.00 monthly payment; or, she is paying zero dollars a month and not assuming the lease of her vehicle, and, therefore should not be claiming a vehicle payment.

Taking the Debtor's most recent filing, the Fifth Amended Plan, [ECF No. 64], as true, the Debtor is intending to assume her lease at the rate of $870.00 per month. In the Debtor's Schedule "J" at line 17a, the Debtor lists her car payment for "Vehicle 1" as $870.00. [ECF No. 23]. The current "IRS local standard" at the time of the Debtor filed her Amended Means Test was $485.00. The Debtor's Plan should not be confirmed because the Debtor is assuming a lease that is excessive and not reasonable necessary. The difference between the Debtor's lease and the IRS local standard is $355.00, and this amount by itself could procure a more affordable vehicle.   However, if the Debtor is not assuming the lease, then the amount should be reduced to zero.

3. **The Debtor Failed to Attach Required Information for Schedule "I" at Line 8a**

Section 8a of Schedule I requires the Debtor to "[a]ttach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly income." [ECF 23]. The Debtor lists that she receives $8,000 as "net income from rental property and from operation a business, profession, or farm." [ECF 23]. However, the Debtor has not provided any information regarding this business. The Debtor claims to be a self-employed realtor but has not provided, pursuant to the instructions, any documents listing her business records regarding expenses, assets or liabilities. The Debtor's Plan should not be confirmed and her case should be dismissed.

### III. **The Debtor's Plan Seems to Fail the Best Interests Test under Section 1325(a)(4) Because Her Creditors Would Not Receive as Much as They Would Have Received Had the Debtor Pursued a Chapter 7 Liquidation**

The Debtor's Plan should not be confirmed because the Debtor seems to fail the Best Interests Test, a/k/a, the Liquidation Test. Section 1325(a)(4) states,

> the court shall confirm a plan if the value, as of the effective date of the plan, of the property to be distributed under plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

The Debtor has listed in line 8a of Schedule "I" that she receives $8,000.00 as net income "from rental property and from operating a business, profession, or farm," but the Debtor does not "[a]ttach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income," as is required by the subtext of line 8a. [ECF No. 23].

Without the Debtor providing any corresponding documentation regarding her business operations explaining how she receives an $8,000.00 per month income, there is no way to know

8

whether the Debtor's creditors' best interests are being met by the Debtor filing for relief under chapter 13. Since it does not appear that the Debtor meets the requirements of the Liquidation test under section 1325(a)(4), the Debtor's Plan should not be confirmed and her case should not be dismissed.

**WHEREFORE**, Creditor, Gilbert Law Group, P.A., formerly known as Gilbert & Caddy, P.A., respectfully submits that the Court (i) sustain this Objection to Confirmation of the Debtor's Fifth Amended Plan, and (iii) granting such other relief as is just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent in the manner stated to all parties listed below this 29th day of June 2018.

FURR COHEN
*Attorneys for Creditor*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532


BY: /s/ Alan R. Crane_____
    Alan R. Crane
    Florida Bar No.: 0963836
    E-Mail: acrane@furrcohen.com


**Served via ECF:**

- Alan R Crane    acrane@furrcohen.com; rrivera@furrcohen.com; atty_furrcohen@bluestylus.com
- Michael A. Frank    pleadings@bkclawmiami.com, bkcpleadings@gmail.com;frankmr48583@notify.bestcase.com
- Bryce J Gilbert    bgilbert@theconstructionlawyers.com
- Lyudmila Kogan    luda.kogan@ppkfirm.com
- Andrea R Meenach-Decker    RDecker@bakerdonelson.com, tgoff@bakerdonelson.com

- Nancy K. Neidich    e2c8f01@ch13miami.com, ecf2@ch13miami.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- On Deck Capital, Inc. (Levi)    clevi@ondeck.com
- Alex P Rosenthal    alex@rosenthalcounsel.com
- Lindsey Savastano    Lsavastano@logs.com, electronicbankruptcynotices@logs.com